# EXHIBIT

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

THIS AGREEMENT AND RELEASE (hereinafter, "Agreement") is made this 10th day of ___December___, 2015 and entered into by and between Coach USA, Inc. (hereinafter, "Coach USA") and Dillon's Bus Service, Inc. (hereinafter, "Dillon's"), and each and all of their respective predecessors in interest, successors, members, agents, employees, servants, representatives, parent corporations, subsidiaries, affiliates, assigns, officers, directors, administrators, underwriters, adjusters, heirs, personal representatives, beneficiaries, trustees, attorneys, and insurers (hereinafter, Coach USA and Dillon's are collectively referred to as "Releasees"), on the one hand, and Johnathan Smith, his heirs, executors, beneficiaries, successors, assigns, agents, representatives, attorneys, insurers, his wife, his partner, and his other immediate family members (hereinafter, "Mr. Smith" or "Releasor"), on the other hand.

WHEREAS, Mr. Smith resigned from Dillon's employment in mid-December 2014; and

WHEREAS, Mr. Smith, represented by Alan Mitchell of The O'Neal Firm, LLP, in a lawsuit styled as *Johnathan Smith v. Dillon's Bus Service, Inc., et al.*, with a Civil Action No. of 8:15-cv-002677-GJH (hereinafter, the "Federal Lawsuit"), pending in the United States District Court for the District of Maryland, alleged claims for overtime wages pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (hereinafter, "FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Emp. § 3-401, *et seq.* (hereinafter, "MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Emp. § 3-501, *et seq.* (hereinafter, "MWPCL"); and

WHEREAS, in the Federal Lawsuit Mr. Smith alleged that Dillon's was his employer and that Coach USA was his joint employer; and

WHEREAS, Coach USA denies that it was Mr. Smith's joint employer and Releasees deny that Mr. Smith is owed any overtime wages; and

WHEREAS, there exists a bona fide dispute between Coach USA, Dillon's, and Mr. Smith with respect to Mr. Smith's claims that he was employed by Coach USA and that he was owed overtime wages from Releasees; and

WHEREAS, Coach USA, Dillon's, and Mr. Smith desire to settle fully and finally all differences between them, including but not limited to those differences that were or could have been claimed by Mr. Smith; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth below, and the sufficiency and receipt of which is hereby acknowledged, and to avoid costly and protracted litigation, Releasees and Mr. Smith (hereinafter, collectively referred to herein as the "Parties") agree as follows:

1.      **Wages, Leave, or Other Compensation Due to Mr. Smith.** Releasees represent that they have paid any and all remaining wages or accrued leave or similar compensation to Mr. Smith through the date his employment ended. Mr. Smith has accepted said wages or accrued

leave or similar compensation and shall not contend that he is owed any additional wages or compensation from Releasees.

2.  **Consideration.**  In exchange for Mr. Smith's release of Releasees, described in Paragraph 4, below, and for his confidentiality, Releasees shall issue a check to Mr. Smith in the amount of thirteen thousand and fifty dollars ($13,050.00), within eight (8) business days after the Court has entered an Order approving this Agreement, and is conditioned upon Coach USA's and Dillon's counsel's receipt of a completed W-9 Tax Form for Mr. Smith, which shall be provided in advance of the Releasees' issuance of the check. The check will be paid to the order of "Johnathan Smith" and shall be sent by courier, hand delivery or overnight delivery service to Alan Mitchell, Esq. at The O'Neal Firm, LLP, 700 12th Street N.W., Suite 700, Washington, D.C. 20005. Coach USA and/or Dillon's will issue the appropriate Form 1099 with respect to such payment.

Mr. Smith agrees that the amount of the consideration is a fair and reasonable settlement paid to him to settle the Federal Lawsuit.

On the date the aforementioned check made payable to "Johnathan Smith" is received by Mr. Mitchell, Mr. Smith, by his attorney, Mr. Mitchell, will file a Joint Stipulation of Dismissal dismissing the Federal Lawsuit with prejudice.

3.  **Attorneys' Fees, Expenses, and Costs.**  A check made payable to "The O'Neal Firm, LLP" in the amount of eleven thousand nine hundred and fifty dollars ($11,950.00), as and for attorneys' fees, costs, and other expenses incurred by and on behalf of Mr. Smith, shall be sent by courier, hand delivery or overnight delivery service to Alan Mitchell, Esq. at The O'Neal Firm, LLP, 700 12th Street N.W., Suite 700, Washington, D.C. 20005 within eight (8) business days after the Court has entered an Order approving this Agreement, and is conditioned upon Coach USA's and Dillon's counsel's receipt of a completed W-9 Tax Form for The O'Neal Law Firm, which shall be provided in advance of the Releasees' issuance of the check. Coach USA and/or Dillon's will issue an appropriate Form 1099 with respect to such payment.

Mr. Smith and The O'Neal Firm, LLP agree that the amount of the attorneys' fees, expenses, and costs associated with The O'Neal Firm, LLP's representation of Mr. Smith in the Federal Lawsuit is fair and reasonable.

On the date the aforementioned check made payable to "The O'Neal Firm, LLP" is received by Mr. Mitchell, Mr. Smith, by his attorney, Mr. Mitchell, will file a Joint Stipulation of Dismissal dismissing the Federal Lawsuit with prejudice.

4.  **Release by Mr. Smith.**  Except as provided for in sub-paragraph (A), below, and with respect to all claims arising up to the Effective Date, which is the eighth (8th) day after the date that Mr. Smith has signed the Agreement (hereinafter, the "Effective Date"), Mr. Smith, for himself, his heirs, executors, beneficiaries, successors, assigns, agents, representatives, attorneys, insurers, his wife, his partner, his other immediate family members, and any other person or entity who could now or hereafter assert a claim in his name or on his behalf, hereby releases and forever discharges Releasees, and each and all of its respective predecessors in interest,

successors, members, agents, employees, servants, representatives, parent corporations, subsidiaries, affiliates, assigns, officers, directors, administrators, underwriters, adjusters, heirs, personal representatives, beneficiaries, trustees, attorneys, and insurers from any and all charges, complaints, claims, administrative filings, liabilities, obligations, promises, agreements, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses actually incurred of any nature whatsoever, known or unknown, suspected or unsuspected which Mr. Smith had, now has, or may have up until the Effective Date with respect to all matters relating to or arising from his employment with Coach USA and/or Dillon's, including but not limited to:

(a) The National Labor Relations Act, as amended;
(b) Title VII of the Civil Rights Act of 1964, as amended;
(c) The Civil Rights Act of 1991, as amended;
(d) Sections 1981 through 1988 of Title 42 of the United States Code;
(e) The Reconstruction Era Civil Rights Acts;
(f) The Employee Retirement Income Security Act of 1974, as amended;
(g) The Family and Medical Leave Act of 1993;
(h) The Immigration Reform Control Act, as amended;
(i) The Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Acts;
(j) The Age Discrimination in Employment Act of 1967, as amended;
(k) The Fair Labor Standards Act, as amended;
(l) The Older Workers Benefit Protection Act of 1990;
(m) The Occupational Safety and Health Act, as amended;
(n) The Maryland Fair Employment Practices Act, as amended;
(o) The Maryland Wage Payment Laws, as amended;
(p) The Maryland Equal Pay Law, as amended;
(q) The Vietnam Era Veterans Readjustment Assistance Act, as amended;
(r) Executive Order No. 11246;
(s) Executive Order No. 11141;
(t) Any other federal, state, or local civil or human rights law, or any other local, state, or federal law, regulation or ordinance, whether brought at law, administratively, or in equity;
(u) Any other federal, state, or local anti-discrimination ordinances;
(v) Any federal, state, or local claims involving public policy, contract, tort, retaliation, constructive discharge, or common law, whether brought at law, administratively, or in equity; and
(w) Any allegation for any fees, costs, or other expenses, including attorneys' fees, costs, and expenses, incurred related to any claims including, but not limited to, any claims alleging a violation of the FLSA, the MWPCL, and MWHL.

(A) Notwithstanding the foregoing, this Agreement shall not include any claim or right that by law Mr. Smith is prohibited from waiving, including, but not limited to, any workers' compensation and unemployment benefits claims. Additionally, this Agreement does

not release any rights or claims that arise after the Effective Date of this Agreement, including any claim for breach of this Agreement.

5.  **Future Claims By the Parties Related to this Agreement.** This Agreement does not release any rights or claims that arise after the Effective Date of this Agreement, including any claim for breach of this Agreement. In accordance with the standard State of Maryland practice, the release given in this Agreement does not in any way purport to offer or grant immunity from criminal prosecution; however, nothing in this paragraph is intended to create any inference that criminal conduct has occurred and the Parties are unaware of any criminal charges against one another related in any way to Mr. Smith's employment with Dillon's and/or Coach USA.

6.  **Resolution of All Claims.** The Parties represent that they have not filed and will not file any other lawsuits, claims, charges, complaints, grievances, arbitrations, whether at law, administratively, or in equity against the other, notwithstanding any lawsuits, claims, charges, complaints, grievances, arbitrations, whether at law, administratively, or in equity against the other, which cannot be waived by Mr. Smith for a breach and/or violation of this Agreement, where the prevailing Party shall be entitled to its costs, including attorneys' fees, from the non-prevailing Party. See, *infra*, Paragraph 9.

7.  **Consideration for the Resolution of All Claims.** The Parties agree that the consideration set forth in this Agreement is being exchanged to resolve all claims, known and unknown, by the Parties, for Mr. Smith's confidentiality, and payment of Mr. Smith's attorneys' fees, costs, and expenses. The Parties warrant that the consideration that Mr. Smith is receiving represents full satisfaction of all claims against the Releasees.

8.  **Confidentiality.** Mr. Smith shall strictly maintain the confidentiality of the terms and conditions of this Agreement, and any terms and conditions offered or demanded by the Parties during the negotiation process. To the extent that any terms and conditions in pursuance of this Agreement have not been made public by the Court in the Federal Lawsuit as a result of Mr. Smith's Motion and Memorandum of Law seeking approval of the terms and conditions of settlement, Mr. Smith shall not disclose to any individual, other than Mr. Smith's tax accountant, any of the non-public terms and conditions of this Agreement, the Agreement itself, or any non-public issues discussed during the negotiation process. Where such disclosure is permitted for tax purposes, Mr. Smith agrees that disclosure of any non-public information will be made only on a need-to-know basis.

   (a)  In the event that Mr. Smith is asked by any individual or entity not identified in the preceding sentence about the status or outcome of his allegations that he is owed overtime wages by the Releasees, Mr. Smith will respond, "No comment," "It has been amicably resolved," "It has been resolved," or words to that effect. Mr. Smith agrees not to issue any press release of this settlement, place it or its terms on any website or any other electronic media or social network, or convey it or its terms to any third party.

   (b)  Mr. Smith further agrees that the terms of this Agreement and negotiations in pursuance of the Agreement are strictly confidential and shall not be disclosed. A violation of this Paragraph as proven in a court of competent jurisdiction, will

4

        constitute a material breach of the Agreement. In the event of a breach of confidentiality by Mr. Smith or his counsel, Releasees may recover $1,000.00 for each such occurrence of a breach of confidentiality.

(c) Mr. Smith may respond truthfully to inquiries from a governmental agency or the courts of competent jurisdiction, regarding the terms of this settlement but in such response Mr. Smith will advise that the terms of the settlement were agreed to be confidential and will request maintenance of confidentiality by the government agency or court. Mr. Smith agrees that if any third party seeks a court order to compel him to disclose the confidential amount, terms and conditions of this Agreement, then Mr. Smith or his counsel shall immediately notify Christina Bolmarcich, Esq. and Imran O. Shaukat, Esq. of Semmes, Bowen & Semmes, 25 South Charles Street, Suite 1400, Baltimore, MD 21201, (410) 539-5040, so that the Releasees shall have the option, if they desire, to contest any such potential court order.

(d) The Parties agree that all non-public information communicated to or by any party to this Agreement, whether intentionally or inadvertently, will be protected by the attorney-client privilege, work-product protection, joint defense privilege and/or settlement privilege. Communications made in the negotiation or implementation of this Agreement are not intended to be and will not be construed as waivers by any undersigned party of any applicable privilege, protection or immunity.

9. **No Waiver.** By signing this Agreement, the Parties do not waive or release the other from their respective rights to enforce this Agreement. If either of the Parties files a claim or lawsuit, administratively, at law, or in equity to enforce this Agreement, the filing Party will reimburse the other Party its costs, including reasonable attorneys' fees, costs, and expenses incurred in seeking a dismissal of the lawsuit based on this Agreement. Moreover, if a lawsuit for breach of this Agreement is filed, the prevailing Party, as determined by a court of competent jurisdiction, shall be entitled to its costs, including attorneys' fees, from the non-prevailing Party.

10. **Non-Disparagement.** Mr. Smith acknowledges and agrees that Releasees have a significant interest in protecting their reputation, maintaining good relations with their clients and other persons served by Releasees, with persons and entities with whom or which it contracts or may contract, and with other persons and entities, and maintaining good personnel relations with its current employees. In this connection, Mr. Smith will not disparage, speak adversely about, comment derogatorily about, or in any other way make any adverse or negative indications, actions, or comments about Releasees, their affiliates, successors and assigns, or the principals, owners, directors, members, managers, employees, agents, or attorneys of Releasees. Releasees acknowledge and agree that Mr. Smith has a significant interest in protecting his reputation as well. As such, the management of Releasees will not make any disparaging or derogatory statements, whether oral or written, regarding Mr. Smith. A violation of this Paragraph will constitute a material breach of the Agreement.

11. **References and Release of Information.** In response to any reference checks, Releasees will provide only Mr. Smith's dates of hire and departure, last position held, and salary. Releasees will not provide any information regarding the circumstances surrounding Mr. Smith's departure from employment or his claims against Releasees.

12. **Liabilities Related to Consideration.** Releasees make no representation regarding the tax consequences or liability arising from the payments made under this Agreement. Mr. Smith understands and agrees that any and all tax liabilities that may be due or become due because of the payments are the sole responsibility of Mr. Smith, and that any such taxes will be paid by Mr. Smith that may be due or become due. Releasees have no monetary liability or additional obligations regarding payment to Mr. Smith whatsoever (other than the delivery of valid checks pursuant to the settlement under this Agreement). Mr. Smith agrees to bear all tax consequences, if any, attendant upon the payments as recited above in Paragraphs 2 and 3. Mr. Smith further agrees to indemnify and hold Releasees harmless from and against tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the payments recited in Paragraphs 2 and 3.

13. **No Future Employment with or by Coach USA or Dillon's.** Mr. Smith agrees that he will not knowingly seek employment with Coach USA and/or Dillon's as of the date of this Agreement. For purposes of this section, "Coach USA and/or Dillon's" shall not include any companies that will be divested or acquired by Coach USA and/or Dillon's after the date of this Agreement. Furthermore, this section shall only apply to Mr. Smith, individually, and shall not apply to his heirs, executors, beneficiaries, successors, assigns, agents, representatives, attorneys, insurers, his wife, his partner, and his other immediate family members.

14. **Period for Review and Consideration and Revocation of Agreement.** Mr. Smith understands and agrees that he:

> (a) has carefully read and fully understands all of the provisions in this Agreement;
> (b) is, through this Agreement, releasing Releasees from any and all claims that he may have against Releasees;
> (c) is knowingly and voluntarily agreeing to all of the terms set forth in this Agreement;
> (d) knowingly and voluntarily intends to be legally bound by the same;
> (e) was advised and hereby is advised in writing to consider the terms of this Agreement and to consult with an attorney of his choice prior to the execution of this Agreement. Mr. Smith understands and agrees that the terms of this Agreement were determined after negotiation, and as such, should not be strictly construed for or against any party to this Agreement;
> (f) understands that rights or claims under the Age Discrimination in Employment Act of 1967, as amended, (29 U.S.C. § 621, *et seq.*) may arise after the date this Agreement is executed are not waived; and
> (g) **has, by this Agreement been advised to consult an attorney of his choice before signing. Mr. Smith also understands that he has up to twenty-one (21) full calendar days to consider whether to sign this Agreement. By signing on any date prior to the expiration of the twenty-one (21) day period, Mr. Smith voluntarily elects to forego waiting the full twenty-one (21) days to sign the Agreement. Mr. Smith and Releasees acknowledge and agree that for a period of seven**

(7) calendar days following Mr. Smith execution of this Agreement, Mr. Smith may revoke this Agreement by providing Christina Bolmarcich, Esq. and Imran O. Shaukat, Esq. of Semmes, Bowen & Semmes, 25 South Charles Street, Suite 1400, Baltimore, Maryland 21201 with written notification, sent via U.S. Mail, of the revocation. Such notification must be received via registered, overnight, express mail delivery or hand delivery to Ms. Bolmarcich and Mr. Shaukat prior to the acceptance of any payment by Mr. Smith.

15.    **No Assignment of Rights.** Neither Mr. Smith nor Releasees may assign, transfer, or alienate any of the rights or obligations set forth herein.

16.    **No Admission of Liability.** The Parties understand and agree that no provision of this Agreement, nor the execution of this Agreement, shall constitute or be construed either as an admission of any liability by either Party whatsoever, for any purpose, and any such liability is expressly denied.

17.    **Acknowledgment of Review of Agreement.** The Parties expressly represent that prior to signing this Agreement they read it, understood its terms and conditions, were given an opportunity to consult with counsel, and voluntarily signed it. The Parties are satisfied with the terms of this Agreement, and understand that the Agreement is binding upon them and their respective representatives.

18.    **Acknowledgment that Agreement was Negotiated.** The Parties agree and expressly state that this Agreement has been fully negotiated by the Parties with the advice and assistance of their respective attorneys. Neither Mr. Smith nor Releasees shall be deemed or considered to have authored or drafted this Agreement in greater or lesser part than the other. Both Mr. Smith and Releasees acknowledge and expressly state that they were of equal bargaining power with respect to this Agreement and that neither party is entitled to rely upon any rule or law of contract interpretation or construction which would result in a more or less favorable interpretation of the terms and/or conditions of this Agreement based upon either Mr. Smith's or Releasees' role in authoring or drafting this Agreement.

19.    **Governing Law.** The construction, validity, and effect of this Agreement shall be governed by the laws of the State of Maryland without regard to the conflict of law principles of any jurisdiction. The Parties consent to the jurisdiction of the United States District Court for the District of Maryland or Circuit Court of Maryland for Anne Arundel County to resolve any disputes between the Parties. With respect to any federal cause of action that may arise between the Parties which is expressly and exclusively reserved to the courts of the United States by statute or the Constitution of the United States, the United States District Court for the District of Maryland shall be the proper venue.

20.    **Severability.** Should any of the provisions of this Agreement be declined or be determined by any court of competent jurisdiction to be illegal, void, invalid, or unenforceable, the validity of the remaining parts, terms or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. It is

the intention of the Parties that if any term or provision of this Agreement is capable of two constructions, one of which would render the term or provision void and the other of which would render the term or provision valid, then the term or provision shall have the meaning that renders it valid.

21. **Entire Agreement.** This Agreement constitutes the entire, final, and complete understanding between the Parties, and cannot be modified except by the Parties' written consent. Mr. Smith further represents and acknowledges that, in executing this Agreement, he does not rely and has not relied upon any promise, inducement, representation, or statement by Coach USA and/or Dillon's about the subject matter, meaning, or effect of this Agreement that has not been stated in this document.

22. **Counterparts.** This Agreement may be executed by the Parties in one or more counterparts, and may be executed on telefaxed or e-mailed copies, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

23. **Binding.** The Parties acknowledge that they are bound by the terms of this Agreement.

24. **Dismissal with Prejudice of the Federal Lawsuit.** For and in consideration of the payments, promises, and other consideration described in this Agreement, Mr. Smith agrees to dismiss with prejudice his claims against Coach USA and Dillon's contained in the Federal Lawsuit. Mr. Smith authorizes his attorneys to take all steps necessary to obtain the dismissal, including executing a Joint Stipulation of Dismissal with Prejudice and/or the filing of a Motion for Approval of the Settlement with a supporting Memorandum of Law. Mr. Smith and his attorneys agree that in the Memorandum of Law offered in support of Mr. Smith's Motion for Approval of the Settlement, Mr. Smith and his attorneys shall represent that the consideration and the attorneys' fees, expenses, and costs paid by the Releasees are fair and reasonable. Mr. Smith further agrees not to reinstate any claims in the Federal Lawsuit or to file any other claims, charges, or complaints or join in any other lawsuit against Releasees based upon, arising from, or in any way related to any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to and including the date of this Agreement. Mr. Smith understands that he must file a Joint Stipulation of Dismissal with Prejudice the same day of Mr. Mitchell's receipt of the checks described in Paragraphs 2 and 3. Mr. Smith understands and acknowledges that if the Joint Stipulation of Dismissal with Prejudice is not filed the same day of Mr. Mitchell's receipt of the checks described in Paragraph 2 and 3, the full amount of both checks must be returned to Releasees within five (5) business days. Mr. Smith represents and warrants that, other than the claims raised in the Federal Lawsuit, he has no complaints, charges, lawsuits, or other legal proceedings currently pending against Releasees before any federal, state, or local court, agency, or other governmental entity.

25. **Capacity to Contract.** Mr. Smith and his counsel represent and warrant that they have the sole right and exclusive authority to execute this Agreement and to receive the payments to be made in accordance with it and that they have not sold, encumbered, assigned, transferred, conveyed, or otherwise disposed of any of the claims released and discharged by this Agreement. Mr. Smith and his counsel agree to indemnify and hold harmless Releasees from any claims made by others (including any others who may challenge the right and authority of Mr. Smith

8

and his counsel to execute the Agreement and Release and to receive payments to be made in accordance with it) against Releasees arising out of, or in any manner connected with, the Federal lawsuit.

9

THE UNDERSIGNED HAVE CAREFULLY READ THIS AGREEMENT AND UNDERSTAND ITS CONTENTS. THE UNDERSIGNED FREELY AND VOULUNTARILY AGREE TO ABIDE BY THE TERMS OF THIS AGREEMENT. THE UNDERSIGNED HAVE NOT BEEN COERCED INTO SIGNING THIS AGREEMENT.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above as manifested by their signatures below.

_____  12-10-15
Johnathan Smith                  Date

_____  12/10/15
Witness                          Date

Coach USA, Inc.

_____  12/10/15
Ross Kinnear                     Date
Chief Financial Officer

Dillon's Bus Service, Inc.

_____  12/10/15
Derrick Kazimierski              Date
General Manager

B1690623.DOC

10